UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUSAN WILSON,              )  | |
|                            )  | |
|     Plaintiff,             )  | |
|                            )  | |
|     vs.                    )  | Cause No. 1:11-cv-1281-WTL-TAB |
|                            )  | |
| MICHAEL J. ASTRUE,         )  | |
| Commissioner of Social Security, ) | |
|                            )  | |
|     Defendant.             )  | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Susan Wilson requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Wilson filed her applications for DIB and SSI on May 17, 2007, alleging disability beginning on June 21, 2006, due to low back pain, arthritis, diabetes mellitus, obesity, depression, borderline personality disorder, post-traumatic stress disorder, and fibromyalgia. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an ALJ. Wilson was represented by counsel at the hearing, which was held on December 22, 2009. Wilson testified at the hearing, as did her daughter, Sarah Smith, and a vocational expert. On April 9, 2010, the ALJ rendered his decision concluding that Wilson was not disabled as defined by the Social Security Act ("the Act"). The Appeals Council denied

Wilson's request for review of the ALJ's decision, and Wilson filed this timely action for judicial review.

## II. EVIDENCE OF RECORD

The specifics of Wilson's medical records are aptly summarized in the ALJ's decision, and neither party objects to that summary. Accordingly, there is no need for the Court to include a comprehensive summary of the evidence of record here; rather, the Court will discuss particular medical records as relevant in the discussion section below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

The ALJ found at step one that Wilson had not engaged in substantial employment since September 30, 2009. At step two, the ALJ concluded that Allen had the severe impairments of low back pain, arthritis, diabetes mellitus, obesity, depression, borderline personality disorder, and post-traumatic stress disorder. However, at step three, the ALJ found that none of Wilson's

3

severe impairments, individually or in combination, met or medically equaled a listed impairment.

The ALJ then concluded that Wilson retained the residual functional capacity ("RFC") to perform a range of light work that would require her to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand for six hours in an eight hour work day; walk for six hours in an eight hour work day; sit for six hours in an eight hour work day; push and pull up to 35 pounds; and occasionally stoop and bend. The ALJ found that Wilson's impairments moderately limited her abilities to understand and carry out detailed instructions, sustain an ordinary routine without special supervision, and interact appropriately with the general public, but concluded that Wilson retained the ability to remain on-task for at least 90% of an eight-hour work day and to perform work that exposed her to contact with the general public for no more than 20% of an eight-hour work day. Finally, the ALJ concluded that Wilson's impairments left her unable to climb ladders, ropes, and scaffolds, or to perform work including more than concentrated exposure to unprotected heights or moving machinery.

The ALJ determined at step four that, given her residual functional capacity, Wilson was not capable of performing her past relevant work. Finally, at step five, the ALJ found that, given Wilson's RFC, age, education, and experience, she was capable of performing a significant number of jobs in the national economy and therefore was not disabled.

## V. **DISCUSSION**

Wilson argues that the ALJ improperly rejected her claim of disabling pain. The ALJ explained his reason for doing so as follows:

> The claimant's allegations that she is unable to sit or stand due to pain are not consistent with the evidence of record. As noted above, the claimant cooks, does laundry, drives, does lawn work and cleans her home on a daily or weekly basis. I recognize that these activities require some ability to sit and stand. The claimant

4

> is able to perform the combination of sitting and standing required to go to church. Similarly, although it has been reported that the claimant is unable to walk more than one or two blocks before needing to stop, the evidence of record indicates that her gait has routinely been found to be normal during times relevant to this decision. The claimant retained the ability to perform the walking required to attend a cookout at her daughter's house. After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.[2]

Record at 22. After summarizing Wilson's medical records, the ALJ then stated:

> The claimant has alleged that she is unable to sit or stand due to pain. It has been reported that the claimant is unable to walk more than 1 to 2 blocks before needing to stop. I find that the severity reflected in these subjective allegations is not supported by the evidence of record. The claimant reported on June 12, 2007, that she cooked, did laundry, drove and cleaned her home on a daily or weekly basis. By October 2, 2007, the claimant's functionality had improved to an extent to allow her to perform lawn work on a daily or weekly basis. I recognize that all of these activities generally require an ability to sit and stand for some amount of time. The evidence of record also establishes that the claimant periodically attends church. I recognize that this activity also invariably requires some effective combination of sitting and standing. The claimant retained the ability to perform the sitting and standing required to attend a cookout at her daughter's house during a time relevant to this decision. Although it has been reported that the claimant is unable to walk more than 1 to 2 blocks before needing to stop, Ms. Conner [a nurse practitioner] has regularly found that the claimant's gait was normal upon examination. Dr. Dzera would also record that the claimant's gait was normal on August 3, 2009. Dr. Moneyhun concluded on October 1, 2007 that the claimant is able to care for herself and manage her own affairs. The claimant June 29, 2007 MRI was found to contain no evidence of any overall stenosis or significant focal impingement. The claimant retained the ability to go places with her grandchildren and daughters during the times relevant to this decision. She would report in March of 2008 that she was so busy with her children and grandchildren that she could not even get depressed. The evidence of record also

---

[2]With regard to this final sentence, the Seventh Circuit recently has criticized this language as "meaningless boilerplate seen frequently in decisions from ALJs," has "criticized this template as unhelpful," and has "explained that it backwardly 'implies that the ability to work is determined first and is then used to determine the claimant's credibility.'" *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) and citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)). "Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing." *Shauger*, 675 F.3d at 694 (citing *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir.2011) and *Parker*, 597 F.3d at 921-22).

>indicates that the claimant would frequently spend time baby-sitting her grandchildren.

*Id.* at 29-30. Finally, in support of his determination that Wilson could occasionally stoop and bend, the ALJ noted that Wilson "has retained the ability to drive" and that "getting into and out of a vehicle invariably requires some level of effective stooping and bending." Further, he noted that Wilson "also has retained the ability to perform the stooping and bending required to perform lawn work on a daily or weekly basis" and that she "would spend time serving as a baby sitter for her grandchildren" which "invariably required [her] to stoop and bend with some frequency." *Id.*

As the above passages demonstrate, the ALJ discredited Wilson's claim of disabling pain almost entirely because she can perform some household activities and engage in occasional social activities. The Seventh Circuit has "'cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home.'" *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (quoting *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)). When considering daily activities as evidence of a claimant's RFC, an ALJ must consider not only the nature of the activities, but their duration and impact on the claimant. *Id.* (finding that ALJ erred in emphasizing claimant's ability to perform household chores but ignoring that he performed them with great difficulty, for short periods of time, and was exhausted afterward). *See also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ fails to acknowledge that in the documents in which she states she can do household chores, Wilson also explains that she does them very slowly, that she takes "a lot of breaks," and that she requires naps and pain medication afterwards. It was disingenuous of the ALJ to equate Wilson's description of her activities as simply doing yard work and cleaning her house without acknowledging her assertion that doing so takes a toll on

6

her physically.  In addition, the ALJ placed a great deal of emphasis on the fact that Wilson sometimes cares for her grandchildren.  However, caring for a child in the home does not by itself equate to the ability to work outside the home, as babysitting presents flexibility and opportunities for rest not available in the workplace.  *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005).  The record does not suggest that Wilson was providing full-time childcare, but rather that she would babysit on an occasional basis; the record also reflects that doing so was difficult for Wilson, both physically and mentally.  Finally, while the ALJ acknowledged evidence indicating Wilson was unable to walk more than one or two blocks without stopping to rest, he discredited that evidence in favor of evaluations describing Wilson as having a "normal gait."  The fact that Wilson's gait was normal when observed during a medical visit says nothing about her ability to walk for a sustained period of time; Wilson did not claim that she walked with a limp or some other abnormal gait, but rather that she needed to rest after walking for more than a block or two.

The Seventh Circuit has made clear that ability to perform minimal household chores, engage in periodic social activities, and care for young children does not by itself equate to residual functional capacity to work in the national economy.  *See, e.g.*, *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004); *Gentle* 430 F.3d at 867-68.  This is especially so when, as here, the evidence demonstrates that the claimant is able to complete those tasks only with great strain.  *See Craft*, 539 F.3d at 680.  The ALJ impermissibly based his credibility determination on these factors, requiring remand.

On remand, the ALJ also should reexamine his determination regarding Wilson's ability to remain on-task without special supervision for 90% of a work day.  In support of that determination, the ALJ noted that Wilson once complained during a therapy session that her

daughter expected Wilson to babysit without warning.  The ALJ reasoned that Wilson's ability "to summon the motivation to perform the task, without any advance warning, generally indicates that the claimant would be off task less than 10% of the time throughout the workday." *Id.*  This bare conclusion disregards evidence suggesting that being called on to babysit without notice caused great strain on Wilson. It is also illogical.  The fact that Wilson apparently rose to the occasion and cared for her grandchildren—of unspecified ages, an unspecified number of times, and for unspecified periods of time—simply cannot be equated with remaining on task 90% of the time week after forty-hour work week.

Wilson also contends on appeal that the ALJ erred by citing only evidence supporting his decision and specifically by giving short shrift to an evaluation by Dr. Furman Wallace, Jr.  Because the ALJ must consider the entire record when deciding the case on remand, it is not necessary for the Court to address this issue here.  The Court trusts the ALJ to give proper consideration to all the evidence on remand and to weigh it—and resolve the matter—consistent with this order and with the law of this Circuit.

## VI.  <u>CONCLUSION</u>

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED. 01/28/2013

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification